was not accepted, the company requested the borough to have its own solicitor draft a bond which would be satisfactory to council. After considerable delay, this was done, and the borough solicitor drafted a form of bond which was executed by the company and filed with the borough council. But meanwhile a new borough solicitor had been appointed, and he disapproved of the form of bond which had been prepared by his predecessor, and drafted a different form which the surety companies refused to execute. The president of the company then offered to give a bond for a very much larger amount, if individual sureties would be accepted; this proposition was, however, rejected.

The decree of the court below provides for the execution and delivery of a bond conditioned as required by the ordinance and its amendment. The court will see that the bond so executed is in proper form, and the rights of the appellant in this respect will be fully protected. The assignments of error are dismissed, and the decree of the court below is affirmed at the cost of appellant.

---

## Fleming, Appellant, *v.* McDonald.

*Trespass—Slander of title—Deceit—Evidence.*

In an action to recover damages for an alleged false and malicious statement in the nature of slander of title, a verdict for the plaintiff will not be permitted to stand where the evidence shows that the plaintiff had a lease from defendant's husband which did not forbid subletting, and which had two years to run; that he had an offer from a third person to take a sublease for the unexpired term; that such person desiring two years in addition to the unexpired term and with full knowledge of the terms of the lease, addressed himself to the defendant for the purpose of getting such additional time; that the defendant, who could not read, said to him that the plaintiff had no business to rent the place, that he had no lease and that she would not allow anybody to move in there; there being nothing to show why the proposed subtenant, who did not in fact sublet, declined to take the property.

Argued Oct. 21, 1910. Appeal, No. 125, Oct. T., 1910, by plaintiff, from judgment of C. P. No. 1, Allegheny Co., Sept. T., 1906, No. 46, for defendant n. o. v. in case of James Fleming v. Jane McDonald. Before FELL, C. J., MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Trespass in the nature of slander of title.

At the trial the jury returned a verdict for the plaintiff for $2,000. On a motion for judgment for defendant non obstante veredicto, MACFARLANE, J., filed the following opinion:

Fleming, the plaintiff, was a tenant of Samuel McDonald for a term of five years from May 1, 1903. McDonald died and his heirs were his wife, the defendant, and his children. The statement charges that in May, 1906, Fleming was about to close a lease with one Schwartz for a term of two years, which had been agreed upon between them, and that the defendant told Schwartz that no one could rent from Fleming and if any person rented from him he could not get into the house and that Fleming had no right to rent the property. This it is claimed was false and malicious and deterred Schwartz from making the lease, to the plaintiff's damage.

At the time of the trial Schwartz had become insane and the only testimony upon the statements of Mrs. McDonald was that of Arnold. He and Fleming substantially agree that Schwartz accompanied by Arnold came to see Fleming and that Fleming and Schwartz agree that Schwartz would take the property at $200 a month but that Schwartz wished to get three years more. By the terms of the written lease there was nothing to prevent Fleming from assigning or subletting. Arnold testified that Schwartz said to Fleming, "But I would like to get three more if I could; I am not satisfied with the two." That they went to see Mrs. McDonald to see whether she would be satisfied for Schwartz to go into the house and to get the additional lease if he possibly could. That he wanted to make sure he could go into the place.

That they went to Mrs. McDonald to rent the property. That Schwartz wanted to make sure that he could get in the place, he didn't want to go in and find he couldn't get in. That they went to see her with the intention of getting an extension of the lease and seeing the lady about the two years going in. He says when we came there we stated our business and Mrs. McDonald said that Fleming had no business to rent the place, and when Schwartz asked her for the additional two or three years, she said that Fleming had no business to rent the place. Further that he told her he had been up and seen Mr. Fleming and rented the place, and she said, "Mr. Fleming has no lease or no business to rent that place to anybody," and she would allow nobody to move in there.

A written lease was to be prepared and executed by Fleming and Schwartz. Schwartz returned to Fleming and they later went to the office of Fleming's counsel. At that time there was no lease prepared and none was ever signed, and Mr. Schwartz did not take the property. Although objections were overruled there was no attempt to show by any statement òf his why Schwartz did not take the property. It appeared from Fleming's testimony that he had told Schwartz the nature of the lease, that he could sublet or rerent, and had read the lease to him before the visit to Mrs. McDonald.

If this is a case for a jury we think there should be a new trial, but we are of opinion that there is not sufficient evidence to submit to the jury. It was undisputed that Mrs. McDonald could not read. She gave an opinion that Fleming could not make a lease but Schwartz knew that Fleming had a lease and he knew that there was nothing in the lease to prevent a subletting and he actually went to counsel's office with Fleming, and it is most significant that the subject of his reasons for declining to take the property was carefully avoided in the testimony. Further, Schwartz went to see Mrs. McDonald about getting a lease for the additional term of three years and he did not succeed in getting it, and it is perfectly mani-

fest that that is the reason why he did not close the lease with Fleming. It is true that there is uncertain testimony that he visited Mrs. McDonald not only for this purpose but also to see whether he could get into the property, but in view of his knowledge of the lease it is absurd to say that this had any effect upon him. It would be indeed going very far to permit a verdict to stand based upon the reason which actuated a man in changing his mind when we have neither his own testimony nor his declarations and nothing more than a guess as to whether the statement of opinion deterred him from making the lease with Fleming.

The representation or statement of Mrs. McDonald was not of any hidden matter as was the case in Paull v. Halferty, 63 Pa. 46, but was upon the construction of the lease the contents of which were known to Schwartz. An action for deceit or false representations could not be maintained upon such testimony, neither do we think can this action of slander of title.

Now, March 24, 1910, motion for judgment non obstante veredicto sustained and judgment is directed to be entered in favor of the defendant and against the plaintiff non obstante veredicto.

*Error assigned* was in entering judgment for defendant non obstante veredicto.

*Thomas M. Marshall, Jr.,* for appellant, cited: Paull v. Halferty, 63 Pa. 46.

*John M. Freeman,* with him *D. T. Watson, Lazear & Blaxter* and *Ernest C. Irwin,* for appellee.

PER CURIAM, January 3, 1911:

The judgment is affirmed on the opinion of the learned judge of the common pleas.